JOHN HALL WILLIAMS v. M. L. SANDS et al., Appellants.

Division Two, June 17, 1913.

1. **COMMON SOURCE: Idem Sonans.** Where both plaintiff and defendant claim under a common source of title, in a suit, in the first count of the petition one to quiet title, and in the second an action in ejectment, plaintiff claiming as heir of Sylvester H. Williams, under a patent issued to Sylvestus H. Williams, and defendants claiming under a tax deed conveying the interest of Sylvester H. Williams and based on a tax sale in pursuance to a suit against and publication to Sylvastus H. Williams, founded on a tax bill against S. H. Williams, the rule of *idem sonans* has nothing to do with the case. Both parties claim under a common source, and where that is the case, whether the suit be one at law to quiet title or in ejectment, the only question is, who has the better title from that common source?

2. **HEIRSHIP: Question of Fact: Substantial Evidence.** The question of whether plaintiff is the only heir at law of the patentee, or whether he is an heir at all, is one of fact, and if there is substantial evidence to support the finding of the court sitting as a jury, that finding will not be disturbed on appeal, even though it is based wholly on plaintiff's testimony, since the credibility of a witness is for the triers of the facts.

3. **TAX DEED: Prima Facie Valid: Rebuttal by Record.** A tax deed, in the usual form and purporting to convey the interest of the common source of title, is *prima facie* valid; yet its *prima facie* validity may be rebutted by the introduction in

evidence of the papers and proceedings in the tax suit, and if an inspection of them establishes the invalidity of the tax judgment, the sheriff's deed founded thereon will also be held to be invalid and void and as conveying no interest.

4. ———: ———: **Premature Non Est Return: Order of Publication.** A return issued November 16th and made returnable "on the first Tuesday after the first Monday in December," and returned *non est inventus* on the 23d of November, is prematurely returned, and an order of publication made at the December term and on the 21st day of February, is void. If the sheriff is unable to find the defendant and obtain service, it is his duty to retain the writ and not make *non est* return until the return day; and an order of publication based on a premature *non est inventus* return is void, and in consequence the judgment is void, and the tax sale and sheriff's deed made under such a judgment is invalid.

5. **LACHES: Suit to Quiet Title: Paying Taxes.** The application of the doctrine of laches is bottomed on the theory that the acts of plaintiff have so misled defendant to his injury, or so induced and lured him to make expenditures, or have put him in such attitude towards the subject-matter, that it would be inequitable and unconscionable to permit plaintiff to recover. But where defendants bought the land at a void tax sale in 1898 founded on a suit against plaintiff's father, and entered into possession and paid taxes until plaintiff's suit to quiet title and in ejectment was brought in 1908; and where plaintiff's father did not die until 1905 and in 1903 plaintiff, who did not live in the county, incidentally met one of the defendants, and said he would like to have the land back, as his mother's money had paid for it, and was willing to pay defendants what it had cost them, and said defendant said they had bought it in good faith and paid the taxes and it would not suit them to surrender it to plaintiff, and plaintiff thereupon said he had "found some little irregularity in the title," there is no element of laches in the case.

6. ———: ———: **Making Improvements.** Where defendants, five or six years after they bought the land at a tax sale, made a lease to a miner, who put up a residence on it to be used by him while prospecting for minerals, under an agreement that the house was to be removed if the tenant did not purchase the land, and in order to obtain money to build the house he procured defendants to become sureties on his notes and secured them by a chattel mortgage on the improvements, and later settled the notes and obtained a release of the mortgage by executing a bill of sale of the improvements to defendants, the circumstances are such as to furnish no basis for an application of the doctrine of laches.

7. **TAX SALE: Suit Within Three Years.** Section 11506a, Revised Statutes 1909, requiring suit to be brought within three years from the time of recording the tax deed, applies only to tax deeds fair upon their face and issued pursuant to the Revenue Act of 1872, and it does not apply to a tax deed issued in pursuance to a void judgment for taxes.

8. ————: **Recovery of Taxes.** In a suit, which in one count is to quiet title, and in another is ejectment, defendants, who claim title under a void tax deed made in 1898, cannot recover the money paid out by them for taxes. Those who paid taxes on lands purchased by them prior to the Act of 1903 are not permitted to recover any such taxes in a suit at law, and that act had no retrospective operation and does not apply to any sales of land for taxes made prior to the time it took effect.

9. ————: ————: **Improvements: Equitable Relief.** In an action at law wherein defendants' tax deed made prior to 1903 is held to be void, defendants, although they put into their answer a plea for equitable relief, cannot recover taxes, interest and purchase price paid by them. If the petition is one in equity for relief from a void or voidable sale of land for taxes, made prior to the enactment of the Act of 1903, defendants then, if they lose the land, can recover back the purchase price and interest, and possibly, under certain circumstances, the value of the improvements, not by reason of that or other statute, but because of the principle that plaintiff must do equity before he can have equity; but in a cold action at law, defendants cannot recover the purchase price, interest and taxes paid. But where the suit is ejectment, this rule does not bar them from bringing another suit under Sec. 2401, R. S. 1909, to recover the value of the improvements made by them in good faith.

Appeal from Benton Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.

*W. A. Dollarhide* and *Barnett & Barnett* for appellants.

(1) The court erred in finding for the plaintiff in this case for the reason that the patent shows the land was patented to Sylvestus H. Williams, and the

plaintiff's evidence shows that his father's name, under whom he claims, is Sylvester H. Williams. Having failed to establish any title in Sylvester H. Williams, the plaintiff as his heir cannot recover. Sylvestus and Sylvester are not *idem sonans*. 29 Cyc. 276; 16 Am. and Eng. Ency. of Law, p. 125. The following names have been decided not to be *idem sonans*: Ammon and Amann: Amann v. People, 76 Ill. 188; Brimford and Binford: Entrenkin v. Chambers, 11 Kan. 377; Barnep and Barnap: Queen v. Carter, 6 Mod. 168; Burrul and Burril: Com. v. Gillespie, 7 S. & R. Pa. 469; Burger and Buerger: Shumaker v. Schoen, 19 Pitts. L. J. 69; Catherine Swails and Ratherine Swails: Swails v. State, 7 Blackf. 324; Comyns and Cummins; Cruikshanks v. Comyns, 24 Ill. 692; Dellia and Della: Vance v. State, 65 Ind. 460; Mitchell v. State, 63 Ind. 276; Humphreys v. Humphrey: Humphrey v. Whitter, 17 Ala. ——; Otha and Oatha: Brown v. People, 66 Ill. 344; Schoonhoven and Schoonhover: Schoonhoven v. Gott, 20 Ill. 46; Shurtliff and Shirtliff: Gordon v. Austin, 4 Tr. 611; Service and Servoss: Sinkell v. Letcher, 40 Ill. 48; Semon and Seaman: 7 Ark. 70; Sensenderfer and Sensenderf: Com. v. Bowers, 3 Brewst. 350; Smith & Weston and Smith & Wesson: 61 Ind. 447; John S. Carrey and John S. Scarry: Scarry v. Lumber Co., 233 Mo. 686; Kitie and Katie: Miller v. Medley, 236 Mo. 694; Lane and Lean: Geer v. Lumber Co., 134 Mo. 85; Grofton and Graton: Graton v. Land Co., 189 Mo. 322; Griffin and Griffle: State v. Griffie, 118 Mo. 188; Simonson and Siemson-Simonson: Simonson v. Dolan, 114 Mo. 176; Emma and Emily: Burge v. Burge, 94 Mo. App. 15. (2) But assuming that Sylvestus and Sylvester Williams are one and the same person, yet we insist that there is no satisfactory evidence to show that the plaintiff here is his only heir at law. There is no administration shown which discloses the

names of the heirs of Sylvester or Sylvestus Williams, and plaintiff introduces no one, except himself, to show who the heirs of his father are. He rests wholly upon his own testimony and that so vague, uncertain and unsatisfactory that it would certainly be unsafe to render a judgment against us in his favor as the sole owner of this land. He seems to be juggling with his own name; he sues as John Hall Williams but says his name is John F. Hall; that he goes by the name of John Hall, John F. Hall, John F. Williams. He doesn't disclose the fact that he goes by the name of John Hall Williams at any time, yet he sues in that name. He further says that his father's name was Sylvester Hall. Such statements make his testimony wholly unreliable, both as to what his father's name was and as to his own name. A judgment here for plaintiff would not preclude the real heirs of Sylvestus H. Williams, the patentee, from recovering. (3) The tax deed in question conveys a valid title to the defendants. It is valid on its face and it is prima-facie evidence of title, and that the matters stated in it are true. Hogan v. Smith, 11 Mo. 314; Abbott v. Lindenbower, 46 Mo. 291; Ewart v. Davis, 76 Mo. 129; Stevenson v. Black, 168 Mo. 549. The insertion of the name of Addington in the order of publication is a mere clerical error, and the defendant or any one else reading it would know that it was such. Janes v. Manly, 58 Mo. 559. (4) The tax deed in question was placed on record August 27, 1898, and this suit was brought August 6, 1908; therefore this action is barred by the three years' limitation. Any suit or proceeding against a tax purchaser for the recovery of land sold for taxes shall be commenced within three years of the time of recording the tax deed, and not thereafter. Sec. 11506-a, R. S. 1909. The tax deed, valid on its face, and of record more than three years, will bar recovery on the part of the former owner. Bird v. Sellers, 122 Mo. 23. While the Statute of Limitation

is not pleaded here *eo nomine,* yet the facts constituting the limitation are specifically pleaded and *in extenso.* But the recovery in this case was on the second count, being a count on ejectment, and the Statute of Limitation need not be pleaded by defendant, in order to avail himself of it in an ejectment suit. It may be shown under a general denial. Bird v. Sellers, 113 Mo. 580; Hill v. Atterbury, 88 Mo. 118; Stocker v. Green, 94 Mo. 28; Fairbanks v. Long, 91 Mo. 628. (5) It was a condition precedent to plaintiff's right to recover that he refund the taxes paid by the defendants to them before recovery. Sec. 11508, R. S. 1909; Mangold v. Bacon, 237 Mo. 496. Or at least, there should have been a decree for defendants for a lien upon the land for said taxes so paid. (6) Plaintiff, by reason of his laches, and those under whom he claims, is barred from recovering. At the time of the bringing this suit neither he, nor his ancestors, had paid the taxes for fifteen years. The land had been delinquent since 1893. This suit was brought in 1908. Every person is bound to take care of his own rights and to vindicate them in due season. Galena & S. W. R. Co. v. Ennor, 116 Ill. 55; Kline v. Vogel, 90 Mo. 239. Where a party claiming interest in land, does not assert his right thereto, and permits the adverse party to make improvements on the land and enhance its value, the court will not listen favorably to his demand for the same. Shelton v. Horrell, 232 Mo. 373; Pockman v. Meatt, 49 Mo. 345; McNess v. Sweney, 50 Mo. 388; Landrum v. Bank, 63 Mo. 48; Collins v. Rodgers, 63 Mo. 515; Kelly v. Hurt, 74 Mo. 561; Baker v. Vanderburg, 99 Mo. 378; Allen v. Mansfield, 108 Mo. 343; Craddock v. Short, 134 Mo. 449; Shea v. Shea, 154 Mo. 599.

*W. S. Jackson* for respondent.

(1) The principle of *idem sonans* does not apply in this case. The question is one of identity. Was the

patentee the father of the plaintiff, and if so, was the plaintiff the only heir? In a question of identity, it is admissible to show the name a person bore, his personal appearance and conversations, and the account he gave of himself, his family connections and associations. 9 Am. & Eng. Ency. Law, p. 866 and note 3. Both parties claimed from common source of title, and that source was *Sylvester* H. Williams. The deed introduced by defendants and under which they claim, purports to convey the title of *Sylvester* and not *Sylvestus* H. Williams. Holland v. Adair, 55 Mo. 47; Charles v. Patch, 87 Mo. 453; Stevens v. Black, 168 Mo. 549. (2) The judgment in the tax suit was void. The court had no jurisdiction to render any judgment against Williams. First, because no order of publication was ever made, either by the court or by the clerk in vacation, pursuant to the provisions of Sec. 2022 and 2024, R. S. 1889. Second, because if one had been made it must have been under section 2024 based on the *non est* return by the sheriff, and the return was premature. Lumber Co. v. McCabe, 220 Mo. 166. Third, the judgment was void because the tax bill shows that the land was assessed to S. H. Williams and not to Sylvestus H. Williams. Burkham v. Manewall, 195 Mo. 506. Fourth, it was void because one *J. M. Addington* and not Sylvestus H. Williams nor Sylvester H. Williams was notified to appear and defend the suit in the pretended order of publication as the same was published. Charles v. Morrow, 99 Mo. 646; Myers v. McRay, 114 Mo. 382; Burkham v. Manewal, 195 Mo. 506. (3) While as to the ejectment count, it may not have been necessary to plead the Statute of Limitations, it was essential for defendants to do so as to the first count which was to *quiet title*. He must not only plead the Statute of Limitations, but must plead the particular statute upon which he relies. Murphy v. DeFrance,

105 Mo. 62; Bird v. Sellers, 122 Mo. 32; Blodgett v. Schaffer, 94 Mo. 652. Section 11506a only applied to deeds made pursuant to the law of 1872. These sections must stand or fall together. Abbott v. Doling, 49 Mo. 304; 23 Am. & Eng. Ency. Law, p. 487. (4) There could have been no recoupment of taxes paid by defendants, because in the suit to quiet title under Sec. 650, R. S. 1899, which was the law when this suit was filed, the court had no authority to do more than to ascertain and determine the title. And liens to which defendants might be entitled could not have been adjudged. Podesta v. Land Co., 152 Mo. App. 393. And they could not recover because the statute refers only to tax sales made after its passage. Manwaring v. Lumber Co., 200 Mo. 732; Sugg v. Duncan, 238 Mo. 428; Whiting v. Lead Co., 195 Mo. 509. (5) There is no room in this case for the application of the equitable doctrine of *laches*. Haartstick v. Gabriel, 200 Mo. 242; Lumber Co. v. McCabe, 220 Mo. 182.

FARIS, J.—This is an action coming here on appeal from the circuit court of Benton county, involving the title to certain real estate situate in that county. The petition contains two counts; the first count is a suit to determine interest under section 2535; the second count is ejectment.

The answer is (1) a general denial; (2) a setting up of the manner in which defendants obtained their alleged title to the land in controversy, to-wit, by purchase thereof at a tax sale; (3) a plea of the Statute of Limitations, vaguely averred; (4) a plea averring laches, and (5), finally, that if the decision of the court be adverse to them they have judgment, by way of counterclaim, for the value of certain improvements, which they aver they erected upon the land in question, and for the sums paid out by them as the purchase price at the sale for taxes, and for taxes paid on the land for some six years.

The reply was a general denial of the new matter; an admission as to the then possession of the defendants, and an allegation that such improvements as were placed on the land were of no value thereto, adding naught to it of a permanent nature, and that the alleged improvements were put on the land by defendant J. G. White, acting merely as a lessee of the land from defendants M. L. Sands and J. W. Sands, who are claiming the title thereto.

The cause was tried before the court sitting as a jury; no declarations of law were asked by or given for either side. The court found the issues for plaintiff upon both counts of his petition; adjudging him on the first count to be the owner in fee thereof and divesting the defendants of all title thereto, and on the second count adjudging to him ouster of defendants from the possession of said land. No finding whatever was made upon the equitable counterclaim of defendants for their improvements; for the sums expended by them as the purchase price of said land when bought at the tax sale, or for sums paid by them as taxes on the land since the tax sale and up to the time of the bringing of this suit. From the judgment in favor of plaintiff, defendants, after the usual procedure, duly took and now prosecute this appeal.

The suit was brought on the 6th day of August, 1908; the land was sold for taxes as the land of "Sylvastus H. Williams" and bought in by defendants M. L. Sands and J. W. Sands on the 12th day of August, 1898.

The proof adduced upon the trial on the part of plaintiff tended to show that plaintiff was the only child and the only heir at law of one Sylvester H. Williams; that said Sylvester H. Williams died on the 27th of April, 1905, leaving no widow surviving him. Plaintiff offered patents from the United States Government to the land in question, conveying the same in fee to "Sylvestus H. Williams" of Benton county,

Missouri. Plaintiff showed that he had found these patents among the effects of his father after the latter's death; specifically that he had gotten them out of his dead father's trunk.

Upon cross-examination, plaintiff testified that he had never lived in Benton county except about eight months; that his residence was in Kansas City; that he had been known there in late years as "John F. Hall" and had been called and known there also as "John F. Williams;" that he had changed his name from Williams to Hall some seven or eight years prior to the trial. Plaintiff also testified that his father's true name was "Hall;" that his father was a British subject who ran away from Toronto, Canada, at the beginning of the Civil War and enlisted in the army under the name of "Williams," and that his father retained the name of "Williams" till his death. Plaintiff's testimony further showed that he had himself personal knowledge of his father's entry of the land in question and of his going to Boonville for the purpose of entering the same, and that the name mentioned in the patents is, or was intended to be, that of the identical person who was the father of plaintiff. By inference, though not pertinent here, it is to be gathered from the record that Sylvester H. Williams died in the Soldier's Home at Leavenworth, Kansas. The mother of plaintiff and the wife of the said Sylvester died the 19th of April, 1901.

Defendants offered a tax deed under a sale of the land for taxes, which deed was dated the 12th day of August, 1898; recorded on the 27th day of August, 1898, and purported to convey to defendants M. L. Sands and J. W. Sands in equal shares, the right, title and interest of *"Sylvester H. Williams"* in the land in controversy. Defendants also offered the petition in the tax suit, which suit was brought against *"Sylvastus H. Williams"* and the summons issued thereon which was made returnable "on the first Tuesday af-

ter the second Monday in December next, A. D. 1897.''
The sheriff's return upon this summons is as follows:

"Sheriff's Return.   Executed the within writ in
the county of Benton, on the 23d day of November,
1897, by making diligent search for the within named
Sylvastus H. Williams, and not finding him in my
county.

A. F. PRUSSING, Sheriff, Benton County, Mo.''

This summons was issued on the 16th day of No-
vember, 1897, and was returned, so far as the record
shows, on the 23d of November, 1897, though upon its
face it was returnable on the "first Tuesday after the
second Monday in December, 1897.''   At the Decem-
ber adjourned term, 1897, and on the 21st day of Febru-
ary, 1898, as appears from the proof of an order of
publication published in the "Warsaw Times,'' a
weekly newspaper published in Warsaw, Benton coun-
ty, Missouri, an order of publication was made in the
case of "the State of Missouri at the relation,'' etc.,
"against Sylvastus H. Williams,'' which, after recit-
ing that the sheriff of Benton county, after making
diligent search was unable to find the said "Sylvastus
H. Williams'' in his said county and "has returned
said summons *non est* as to said defendant *Sylvastus
Williams,* and it further appearing to the satisfaction
of the court that the said defendants cannot be served
with process in this case, it is therefore ordered by
the court that the said defendant *J. M. Addington* [sic]
shall be notified by publication.''   Further proceed-
ing said order seems to be in proper form.   Neither an
order of the court nor any minute by the clerk was
found in the records of the circuit court ordering or
authorizing the publication of the order partially
quoted above, though a search of the record was made.
Upon the matter of an order, all that was shown was
the printed proof of publication as taken from the
newspaper and verified by the publisher thereof.

Upon the phase of the case touching the equitable counterclaim, the testimony of defendants tended to show that defendants M. L. Sands and J. W. Sands, who claim title to the land by virtue of their purchase at the tax sale, made a lease on the land to defendant J. G. White in June, 1905, and that White had put up a building on it for a residence, to be used by him, presumably, while prospecting on the land for mineral. It further appeared that it was originally contemplated that White should remove this house if he did not purchase the land. It also appeared that in order to obtain the money to build the house on this land, White had procured his co-defendants, with others perhaps, to become security on his notes, securing his sureties by a chattel mortgage on the improvements, that is, the house put by said White on this land; that later, White had settled his notes and procured a release of the mortgage, by executing to his co-defendants and others, being his sureties, a bill of sale of the residence built by said White on the land here in suit. This residence constitutes the improvements in question. The proof further shows that defendants M. L. Sands and J. W. Sands paid the sum of $38 as the purchase price of these lands, and that they had paid some $50 or $60 in taxes for the six years prior to the bringing of the suit. It further appears that sometime in the year 1903 plaintiff met M. L. Sands, one of the defendants, at Cole Camp, and that he had a conversation with said defendant about the land at that time. According to defendant Sands, plaintiff mentioned the land in dispute here and said to him, "I will be willing to pay you back what it cost you; what you paid for it." Defendant Sands says that in this conversation plaintiff rather appealed to his sympathy; said his mother was dead, that his father had been careless about the taxes and for her sake he would like to have it back. Whereupon Sands said to plaintiff, "We bought it in good faith and paid

for it and paid the taxes and it would not suit us at all,'' and that plaintiff then said, ''I found some little irregularities in the title.'' This defendant deposes that plaintiff said nothing further to him at that time; and didn't say what this irregularity was, or what he was going to do about the land; that he heard nothing from him until the year preceding the trial, when the clerk notified him that this action had been filed against him.

This statement would seem to cover sufficient of the facts to make clear what is said in the subjoined opinion.

I. The first contention of defendants which we shall notice arises from their complaint that since the plaintiff claims under ''*Sylvester H. Williams*,'' and since the title shown by him was in ''*Sylvestus H. Williams*,'' no recovery can be had by plaintiff, since the names ''Sylvester'' and ''Sylvestus'' are not *idem sonans*.

The difficulty in agreeing with this contention is that while plaintiff says that his father's name was ''*Sylvester H. Williams*'' and while he shows a patent found among his father's effects conveying the land to ''*Sylvestus H. Williams*,'' yet the tax deed offered by defendants shows that they obtained the title not of ''*Sylvestus*,'' but of ''*Sylvester H. Williams*,'' and that they did this pursuant to a suit for taxes against ''*Sylvastus H. Williams*,'' founded upon a tax bill against ''*S. H. Williams*,'' and that the judgment, the special execution, and the notice of sale were all against ''*Sylvastus H. Williams*;'' while the order of publication found that ''*Sylvastus H. Williams*'' could not be found by the sheriff in his county, and ordered that ''*J. M. Addington*'' be notified by publication. In this condition of the record it is difficult to see what figure the doctrine of *idem sonans* cuts. Both plaintiff and

*Common Source: Idem Sonans.*

defendants claim, as the record shows, under a common source of title, therefore the only question is who has the better title from that common source. This was a suit both to determine interest and in ejectment. In ejectment suits the rule as to the common source of title has prevailed in this State from the beginning. [Holland v. Adair, 55 Mo. 47; Charles v. Patch, 87 Mo. 463; Stevenson v. Black, 168 Mo. 549; Feller v. Lee, 225 Mo. 319; Sloan v. Chitwood, 217 Mo. 462.] No reason is known to exist why the same rule, if it were necessary, as it is not, to invoke it in this case, should not apply in a suit to determine interest under section 2535, and this court has many times held that it does apply. [Charles v. White, 214 Mo. 187; Harrison Machine Works v. Bowers, 200 Mo. 219.]

II. Some contention is made that there was not sufficient proof to show that plaintiff is the sole heir at law of the patentee of this land. The testimony of the plaintiff himself rendered this

**Heirship: Question of Fact.** fairly plain, if any weight and credit is to be given to his testimony. This was a suit at law tried before the court without a jury, and without the giving of any declarations of law or even any request therefor from either side. There was proof upon which the court below might well have found, as it did find, that plaintiff is the sole heir at law of the identical person to whom this land had been patented by the United States. Upon the record here the court below in this sort of case is entitled to have urged in its favor the same presumption touching its finding of fact that this court has ever entertained as to the finding of a jury in a case at law. The court below having found these facts against defendants, we are not disposed to interfere with his holding.

III. We must test the goodness of the paper title of defendants upon the touchstone of the goodness of

the sheriff's deed as based upon the suit for
**Tax Deed.** taxes. The sheriff's deed for taxes offered in
evidence in this case, we may say is *prima facie*
good. We say *prima facie* good for the reason that
it is in the usual form and purports to convey the
interest of Sylvester H. Williams, who was the real
owner of the land, but we bear in mind that "Sylves-
tus H. Williams" was the *record owner* of these lands;
that the suit for taxes was against "*Sylvastus H. Wil-
liams;*" that the tax bill was against "*S. H. Wil-
liams;*" that the sheriff was commanded to summons
"*Sylvastus H. Williams;*" that the *non est* return, the
order of publication, the judgment, the special execu-
tion, the notice of sale, were all in the name of "*Sylvas-
tus H. Williams.*" Keeping these alleged defects in
view we need not, however, pass upon or reason their
effect, because the rule of law is that while a sheriff's
deed is *prima facie* proof of the matters and things
therein stated, yet this *prima facie* showing as made by
said deed may be rebutted by showing in evidence the
papers and proceedings in the tax suit. If upon an in-
spection of the whole record the judgment is found to
be invalid, the sheriff's deed founded thereon is also
invalid and void and conveys no title. [Cummings v.
Brown, 181 Mo. 711.]

Turning to the summons in this case we find that
it was issued on the 16th day of November, 1897; that
it was returnable on the first Tuesday after
**Non Est Return.** the second Monday of December, 1897, but
that it was actually returned *non est inventus*
by the sheriff on the 23d day of November, 1897, only
a week after its issuance and some three weeks prior
to the return day set out in the summons itself. In
this condition of the record we do not think it neces-
sary to consider the other alleged defects in defend-
ants' title urged as arising from the manner in which
the order of publication was made, nor need we con-

sider the contents of the latter. This court has held on numerous occasions that while it is the duty of an officer having in hand process for service, to serve the same speedily, yet if he be unable to find a defendant and obtain service, he must retain the summons until the return day thereof, and that an order of publication made upon a *non est* return improvidently and prematurely made before the return day thereof, is void. [Lumber Co. v. McCabe, 220 Mo. 154; Cummings v. Brown, supra; Stanton v. Thompson, 234 Mo. l. c. 14.] In Lumber Co. v. McCabe, the return made by the sheriff as to the time thereof, as well as to the contents thereof, is practically on all-fours with the one here at bar. In that case it was held that the order of publication in the tax proceeding was invalid and conferred no jurisdiction in the court over the person of the defendant. Upon the authority of this case, and numerous others, we need not pursue this question further. Upon this view it is not necessary to consider the question of what effect, if any, the numerous alleged errors in the body of the so-called order of publication, or the error in the manner of obtaining the same, may have, as to rendering the judgment void. We hold that for the reasons already seen defendants took no title by their tax deed, or by the sale for taxes upon which the deed was bottomed.

IV. The defendants contend that even though it be found in effect that their paper title is bad, yet that plaintiff is estopped to claim title here by his laches. The particular fact, or facts, apparently upon which defendants predicate this contention, arise largely from the conversation had by M. L. Sands with plaintiff in 1903. Plaintiff himself says nothing as to this conversation though he does not deny it. The substance thereof rests wholly upon the testimony of Sands. His testimony and all of the testimony in the case as to this conversation is as follows:

"After I bought this land I saw the plaintiff and had a conversation with him. That was about 1903; never saw him before, nor since until yesterday. I saw him on the train at Cole Camp in 1903. He had been down here; he told me he lived at Kansas City. I got on the train and he was on the train. He heard somebody at the depot call my name, and he approached me and said his name was Hall; that we had bought some land for taxes that formerly belonged to his father, and he said his mother had furnished the money to enter it, and he would like to have it back because he said his father had been careless and the taxes had run on it and it had been sold and he would like to have it back. He said: 'I will be willing to pay you back what it cost you; what you paid for it,' and appealed to me, rather to my sympathy. Said his mother was dead and his father being careless about the taxes and for her sake he would like to have it back. I said: 'We bought it in good faith and paid for it, and paid the taxes and it would not suit us at all.' He said: 'I found some little irregularity in the title.' He didn't say what it was, and didn't say what he was going to do about it. I didn't hear anything from him until last year."

Upon the above testimony and upon the fact that defendants paid the taxes on this land from 1898 to 1905 when the suit was brought, is bottomed the contention of laches. At this time plaintiff lived in Kansas City. He was not in the county of Benton where the land lies at any time after the year 1903, when he had the conversation with defendant Sands, until the trial of this suit, so far as the record shows. The fact as to the erection of the house by defendant White need not be considered. The circumstances themselves are such as to take them out of consideration as any basis for the application of the doctrine of laches. If laches exist in this case it must come from the failure to sue for five years after this conversation, and from

the payment, presumably with the knowledge of the plaintiff, of the taxes on the land by defendants. At the time of this conversation plaintiff had no interest whatever in this land so far at least as the legal title is concerned. He spoke of and urged an equitable title, not shown, or urged here now. The conversation occurred in 1903. Plaintiff's father, the owner of the land, did not die until April 27, 1905, and this suit was begun a little more than three years after the latter date. While it is true that courts, in order to prevent the working of injustice, will sometimes apply the equitable doctrine of laches though the time through which the same has operated is less, and often far less, than that provided by the Statute of Limitations (Shelton v. Horrell, 232 Mo. l. c. 373), yet the application of the doctrine of laches in such case is bottomed on the theory that the actions of plaintiff have been such, and have so misled defendant to his hurt, or have caused him such losses, or necessitated, or induced and lured him to make such expenditures, or have put him in such attitude with relation to the subject-matter, as that it would be inequitable and unconscionable to permit plaintiff to recover. In the case at bar we have no such condition. The plaintiff two years before he had any interest in this land saw the defendant M. L. Sands and undertook to adjust this matter with him; telling him that he desired to make him, Sands, whole, but that he wanted to get back the land; he further advised him that there were irregularities in the title of defendants, arising from defects in the tax sale. From this state of facts and upon the whole record, we are unable to see any facts which so far shock, or might shock, the conscience of the chancellor as to move him to hold against plaintiff's recovery; absent facts which would put into motion the Statute of Limitations and absent time to ripen title thereunder. [Rutter v. Carothers, 223 Mo. 631.]

V.  Defendants contend that the Statute of Limitations known as the three-year Statute of Limitations contained in the Revenue Act of 1872, formerly section 222 of that act, and now section 11506a, Revised Statutes 1909, applies. This section was left out of the revisions of 1879, 1889 and 1899, but has been carried by the revising committee into the Revised Statutes of 1909, as section 11506a.  When originally enacted it was a part of the revenue law of 1872.  [2 Wagner's Statutes, p. 1207, sec. 221; Laws 1872, p. 130, sec. 222.]  This section was not carried into the law when it was amended and partly re-enacted in 1877, nor was it carried into the revision of 1879, but it has been held that it was not repealed by the act of 1877, nor was it repealed by implication by the revision of 1889.  It was also held, however, that it applied only to the tax deeds which were fair upon their face and which were issued pursuant to the Revenue Act of 1872, and that it does not apply to a tax suit or a tax deed such as the one embraced in the case at bar. [Bird v. Sellers, 122 Mo. l. c. 32; Blodgett v. Schaffer, 94 Mo. 652—in the latter case, the section was held to be repealed, but on this holding the case is overruled by the case of Bird v. Sellers.]  Accordingly and on the authority of the case of Bird v. Sellers, supra, we are constrained to hold that the three-year Statute of Limitations is not applicable to the state of facts presented by the record here, and does not apply to the tax deed in question here, and in no wise aids defendants, and so that point is disallowed them.

VI.  Defendants complain that the judgment rendered by the court below should have afforded them relief for money laid out for taxes paid by them and for improvements and other money laid out by them in the purchase of this land.

Taking the last point first, and considering the last point as well as the question of taxes paid by de-

fendants, together, we conclude that there is no merit
in this contention. Prior to the Revenue Act of 1877,
there were provisions in the revenue law by which pur-
chasers at tax sales could recover the purchase price
as well as the taxes subsequently paid on the land by
them. [Laws 1872, p. 129, sec. 219.] Between 1877
and the taking effect of the Act of 1903, there was no
such law. During all this time those who paid taxes
upon lands purchased by them at tax sales, on the
failure of their title, were held by the law as having
acted merely as volunteers, and were not permitted to
recover in a suit at law any such taxes paid by them.
[Carter v. Phillips, 49 Mo. App. 319.] The Act of
1903 (which was written by the writer of this opinion),
does not apply and could not under the Constitution
apply to any sales of land for taxes made prior to the
taking effect of such act. This act has been many
times construed as so applying and not otherwise. It
has been held that while it applies only to sales made
subsequent to the taking effect thereof, if it applied,
or if it had been attempted to apply it, to prior sales,
then it would have been unconstitutional. Since this
sale was made on the 12th day of August, 1898, none of
its provisions apply to defendants, and they cannot re-
cover the purchase price of the land, the taxes paid
by them nor any interest thereon by virtue of the pro-
visions of this act. [Haarstick v. Gabriel, 200 Mo. 237;
Manwaring v. Lumber & Mining Co., 200 Mo. 718;
Burkham v. Manewal, 195 Mo. 500; Petring v. Cur-
rent River L. & C. Co., 111 Mo. App. 373.]

Since this is an action at law defendants are
bound to recover by virtue of law and not by virtue
of any of the provisions of equity, notwithstanding
they have put into their answer a plea for equitable re-
lief, by way of a shadowy counterclaim sounding in
equity. Their status is unfortunately fixed for them by
the attitude of plaintiff. It is not an equitable answer
that gives relief, so as to permit defendants to recover

back taxes, interest and purchase price, in the absence of the provisions of the Act of 1903, but it is the equitable petition filed by plaintiff for relief from a void or voidable sale of land for taxes that has this effect. This condition in case of a petition for equitable relief permits defendant, if he lose the land, to recover back the purchase price and interest, not by virtue of any act or statute, or by virtue of the Act of 1903, but by reason of the operation of the principles of equity which require the plaintiff to do equity before he shall be permitted to have equity. This was held and for this reason held, long prior to the statute of 1903, and the rule is as old as the rules and maxims of equity. [Yeaman v. Lepp, 167 Mo. 61.] If plaintiff had brought his action in equity, instead of his cold suit at law, defendants would have been entitled to recover the amounts expended by them for taxes, at least, and possibly (for we do not pass on this point), if they had so demanded in their answer, present all necessary requisites so permitting, their improvements made by them upon this land. But in a suit at law, as this is, we have already seen that absent a statute, and we had none when the land was sold, defendants cannot recover the purchase price, the taxes paid by them, or the interest on these several sums. Whether recovery can be had for improvements depends of course upon the time and circumstances at which the improvements were erected. [Brown v. Baldwin, 121 Mo. 106.] It is true the court below made no finding whatever upon this point. It has been said by this court that he had no authority to do so in a plain ejectment suit. [Fairchild v. Cresswell, 109 Mo. l. c. 39.] He may have believed that the law warranted his lack of finding, the peculiar circumstances of the manner of the placing of the improvements on the land considered. The fact that some years prior to the placing of the improvements thereon defendants had notice that there were some irregularities in the sale, might have operated

upon the mind of the judge and brought about the lack of a judgment on this point. We see no reason why the requirements of good faith in the erection of these improvements should not apply to defendants as provided for in our statute (Sec. 2401, R. S. 1909) for the recovery of improvements following an ejectment suit. It may be that defendants may be able to bring themselves within the provisions of this statute. We see nothing upon the record to prevent defendants from retaining possession until an ascertainment of the value of their improvements and their right to recover therefor has been had, if they are so advised. Under the count to determine interest, based on section 2535 as now amended, it is more than probable that the court below had jurisdiction to hear, determine and adjudge the matter of compensation for improvements. The provisions of this section, when properly invoked in a proper case, would seem to be broad enough to cover fully the matter of equities thus arising. Be this as it may, we need not and do not pass upon it here. But we are not disposed, holding as we do on other points involved, to reverse and remand this case merely that there may be an adjudication upon the question of whether defendants were entitled to recover for improvements placed on this land in good faith by them or those under whom they claim. We are willing that defendants may yet pursue the remedies given them by section 2401 et seq., Revised Statutes 1909, for the purpose of ascertaining the value of their improvements and of their good faith in erecting them upon this land.

So holding it results that this case should be affirmed, without prejudice, however, to the right of the defendants, if they are so advised, and if the facts permit, to bring an action for the ascertainment of the value of the improvements. It is so ordered. *Brown, P. J.,* and *Walker, J.,* concur.