## BENAS v. MAHER.

### No. 12192.

Circuit Court of Appeals, Eighth Circuit.

May 19, 1942.

Rehearing Denied June 10, 1942.

248

Joseph Boxerman, of St. Louis, Mo. (William H. Allen, of St. Louis, Mo., on the brief), for appellant.

Harry C. Barker, of St. Louis, Mo. (George O. Durham and Barker, Durham & Drury, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The plant of the bankrupt, Mississippi Valley Iron Company, lying between Broadway and the Mississippi River in the City of St. Louis, Missouri, consists of four parcels of real estate, together with buildings, machinery and equipment thereon. These four parcels of real estate contain somewhat more than three acres, and, together with the machinery and equipment thereon, constituted the smelting and refining plant of the bankrupt company. The machinery and equipment annexed to the land consisted of iron smelters, conveyors, carriers, cranes, railroad switches, motors, generators, engines, boilers, etc., essential to a large ore reduction and pig-iron plant constructed during the First World War.

In 1921 bonds of the company were authorized in the total amount of $1,250,000.00; by 1922, $995,000.00 had been issued and were outstanding. The plant had been reconstructed in 1919, during World War I, but, like many other large industrial plants, similarly erected and enlarged, it had proved unprofitable during peace time and had accordingly been out of operation, apparently since about 1926. It had not been abandoned however and watchmen were kept in charge. It appears that through years of non-use and neglect some deterioration had resulted to the machinery and equipment.

April 15, 1932, the Collector of the City of St. Louis obtained against the Mississippi Valley Iron Company a judgment for delinquent taxes for the years 1926 to 1929 inclusive, in the sum of $24,677.45, which amount included penalties and in-

terest, together with $288.16 representing court costs. The bond holders were not made parties to this suit. The clerk of the Comptroller's office of the City testifies that delinquent taxes for the years 1926 to 1939 without penalties or interest amounted to $51,495.22; and that such taxes plus interest and costs amounted to $85,080.89, as of November 30, 1940.

Sometime in 1940 one Frank Lucas obtained a judgment against the Mississippi Valley Iron Company in the amount of about $3,600.00. The witness Ben Berger, for a period of ten years prior to the hearing before the referee, beginning March 19, 1941, was engaged in the business of buying and selling scrap iron, consisting largely of old machinery, metal equipment, etc. In the spring of 1940 he purchased the said Lucas judgment for $1,553.00. The money for this purchase was furnished by appellant George Benas. Berger, who gave an unsecured note for the amount of this loan, had been introduced to Benas a short time before. At that time Mr. Joseph Boxerman represented Berger, and later acted as attorney for Benas. Upon securing the Lucas judgment Berger caused execution to issue, and sought to levy upon the property of the Mississippi Valley Iron Company in order to remove scrap iron. He was stopped, as he says, by other parties filing claims with the sheriff, who refused to proceed with the execution unless Berger furnished bond, which he refused to do. Later, in October, 1940, or before, Berger talked with Boxerman about this tax judgment entered April 15, 1932. The substance of that conversation was that if this property were sold Berger felt he "might be able to come in with a new judgment and get some money out for my judgment". Berger employed Boxerman to take up with the city the matter of this tax sale, agreeing to pay the expenses in case of default. The sale took place November 12, 1940. Mr. Boxerman made the bid of $1,500.00, as the agent for Robert I. Pelton. Appellant Benas paid the amount of the bid to the sheriff, who executed an official deed to Pelton, the agent and personal representative of Benas. November 15, 1940, Benas, Pelton and Berger went to the plant of the Mississippi Valley Iron Company, as Benas says, "to take possession". He turned the property over to Berger "to start dismantling the stuff". The arrangement Berger says he had with appellant relative to the scrap-iron he was

to take out was, "I got to pay him market price whatever it is going to be". He started at once to loading the dismantled scrap-iron on a railroad car.

November 22, 1940, the Mississippi Valley Iron Company was adjudged a bankrupt, and appellee Maher was duly elected and qualified as its trustee. Before any of said scrap-iron, thus loaded in a railroad car, had been removed from the premises, the said trustee stopped further operations and took charge. In due time appellant filed application for orders directing the trustee to surrender forthwith possession of the real estate and to reimburse appellant for certain properties alleged to have been converted.

The trustee in his answer prayed that the tax sale be set aside as invalid and that Pelton be decreed to convey the property back to the bankrupt estate. These petitions of appellant were duly set for hearing before the referee March 19, 1941. The referee filed an exhaustive report holding that the procedure followed by the sheriff in the sale of November 12, 1940, was proper; but that under it appellant acquired no rights which cannot be set aside by return of the purchase money, which the trustee conceded should be done under appropriate order. The referee agreed that, in his opinion, the consideration paid would have been adequate under the state of the title if the transaction had been genuine on the part of Benas; but that the entire substance of that transaction had been, not to secure a valid title by execution sale, but to secure the right to dismantle and dispose of the scrap-iron, of the appraised value of approximately $20,-000.00. His conclusion was that appellant, unmindful of the duties and liabilities imposed upon him by law toward other parties in interest, towit, the bondholders and the City of St. Louis, was a party to a scheme to commit destructive waste, which no court of equity would countenance. His conclusion was that appellant was not entitled to the relief prayed for in the two petitions filed, and that he should cause his agent Pelton to convey the property involved to the Trustee in Bankruptcy. Respecting the right of appellant to a refund of the purchase money paid by him at the tax sale the referee made the following order:

"That the sum of $1,500.00 less any portion of such purchase price which may be returned to George Benas by the Sheriff of the City of St. Louis or the City of St. Louis, and less any and all unpaid costs that may be taxed against said George Benas in this proceeding, be paid to him by the trustee out of the assets that come into the hands of the trustee during the course of the administration of the bankruptcy estate, but such payment shall be made only after all costs of administration of the bankruptcy provided for in Section 64 of the Bankruptcy Act [11 U.S.C.A. § 104] have been paid".

Upon petition for review the district court found the issues against appellant upon his petitions for orders on the trustee; that petitioner's alleged title under the tax sale of November 12, 1940, was void in that the sale was not conducted under the provisions of law then applicable to the City of St. Louis, in which the bankrupt estate was situated; concurred in the finding of the referee that the appellant did not come into court with clean hands, and, "ought not to be allowed to avail himself of the jurisdiction, if any, of Courts of Equity to correct defects in, validate, or make effective a title void and ineffective at law, or to extricate himself from the situation in which he finds himself as a result of his inequitable purpose and conduct".

Appellant is ordered to cause his agent Pelton to convey the property involved to the trustee in bankruptcy, and the court retains jurisdiction of the cause for the purpose of enforcing and carrying out of all the terms and provisions of its decree.

The main question involved in this appeal is the legal status of the tax judgment sale under which appellant claims title. This depends upon the proper construction of the statutes of the State of Missouri in force when the sale was made. It is to be remembered that the judgment was rendered April 15, 1932, execution issued October 7, 1940, the levy thereunder was made October 16, 1940, and the sale followed November 12, 1940. When the judgment was rendered Section 9956, R.S.Mo.1929, was in force, providing that the lien of the state should be enforced by the issue of a special fieri facias, under which the real estate, or so much thereof as might be necessary to satisfy such judgment, be sold. Section 9958, R.S.Mo. 1929, prescribed the duties of the sheriff as follows:

"Sheriff to execute deed.—The sheriff shall execute to the purchasers of real es-

tate under this chapter a deed for the property sold, which shall be acknowledged before the circuit court of the county or city, as in ordinary cases, and which shall convey a title in fee to such purchaser of the real estate therein named, and shall be prima facie evidence of title, and that the matter and things therein stated are true".

It was under these sections that the sheriff acted November 12, 1940. April 7, 1933, the Legislature enacted a law commonly known as the "Jones-Munger Law", relating to collection of delinquent and back taxes, and providing for foreclosure, sale, and redemption of delinquent property. Laws of Missouri 1933, pages 425 et seq., Mo.R.S.A. §§ 11117, 11121 et seq. By Section 2, Laws of Mo. 1933, p. 429, Sections 9952 to 9963 of R.S. Mo.1929 (Art. 9, Chapter 59), were expressly repealed. These sections include Sections 9956 and 9958 R.S.Mo.1929, to which reference has been made, and under which the sale of November 12, 1940, was conducted. This so-called Jones-Munger Act of April 7, 1933, with respect to the foreclosure and sale of delinquent taxes upon property in the City of St. Louis and St. Louis County, proved unsatisfactory; so that, by House Bill 677, approved May 31, 1939, Laws of Mo.1939, p. 878, this Act of April 7, 1933, relating to delinquent and back taxes was amended by enacting eighteen new sections relating to the same subject matter to be known as Sections 9952A-1 to 9952A-18 inclusive, Mo.R.S.A. §§ 11183–11200, and 11201 and "applying to counties and cities not within a county, which may now have or may hereafter have a population in excess of 700,000 inhabitants and to counties which now have or may hereafter have not less than 200,000 and not more than 400,000". This describes St. Louis and St. Louis County exclusively.

Section 2 of Laws 1939, p. 884, Mo.R.S. A. § 11201 contains the following provision respecting repeal of Conflicting Acts:

"Conflicting acts repealed.—All Acts or parts of Acts in conflict with this Act shall be and the same are in so far as they conflict with this Act or apply to counties and cities not within a county herein described, hereby repealed and specifically an act of the Fifty-seventh General Assembly, General Session, as found on pages 425 to 499 (449) inclusive, Laws of Missouri for 1933, and amendments thereto, as they may apply to counties and cities not within a

county which now have or may hereafter have a population in excess of 700,000 inhabitants and counties containing not less than 200,000 and not more than 400,000 inhabitants".

And section 3 of said act contains the following emergency clause:

"Emergency.—Because of existing delinquencies in taxes and by reason of the fact that existing statutes are inadequate for the purpose of effecting the prompt collection thereof in the cities and counties herein described, resulting in insufficient funds for the maintenance of free public schools, care of the afflicted, rendering public assistance and otherwise maintaining the functions of government, the enactment of this Act is required for the preservation of public peace, health, safety, and general welfare of the state, and an emergency exists within the meaning of the Constitution and this Act shall take effect from and after its passage and approval".

Sections 9952A-9 and 9952A-10, Mo.R.S. A. §§ 11191, 11192, apply to sales under execution on a tax judgment and read thus:

"Sheriff to report bids to court—shall be accepted, when.—Whenever a sale under execution on a tax judgment shall be had, the sheriff shall announce that such sale is subject to the approval of the court, and the sheriff shall report the sale and the amount of the bid to the court in which judgment was rendered, and the court shall appoint two disinterested and competent appraisers, who shall appraise the value of the property and the improvements thereon. If the amount bid by the purchaser at the execution sale shall exceed fifty per cent of the value of the property, the court shall confirm the sale, and the sheriff shall execute a deed for the property. If the amount bid by the purchaser is less than fifty per cent of the appraised value of the property, and the title which would be acquired by the purchaser is subject to other taxes, which are a lien superior to the lien of the taxes for which the judgment was rendered, and the combined amount of such prior liens and the amount bid by the purchaser shall exceed fifty per cent of the appraised value of the property, the court shall likewise confirm the sale, and the sheriff shall execute a deed to the purchaser. If the amount bid, together with prior tax liens, if any, shall be less than fifty per cent of

the appraised value of the property, the court may require the purchaser to increase his bid to an amount equal to fifty per cent of such appraised value, and if the purchaser agrees so to do, and makes such additional payment, the sale shall be approved, and the sheriff shall execute and deliver a deed to the purchaser, but if the purchaser declines to increase his bid and make such additional payment, the sale shall be disapproved and the lien of the judgment continued, subject to the issuance of subsequent executions."

Sec. 9952A-10. "Sheriff to execute deed for property sold.—The sheriff shall, subject to the provisions of the preceding section, execute to the purchasers of real estate under this act a deed for the property sold, which shall be acknowledged before the circuit court of the county or city not within a county, as in ordinary cases, and which shall convey a title in fee to such purchaser of the real estate therein named, and shall be prima facie evidence of title, and that the matters and things therein stated are true."

The trial court held that the sale of November 12, 1940, should have been held under these sections of the Act of May 31, 1939. It appears that, at said sale, the sheriff conducting the same did not announce, at the time that the sale was being made subject to the approval of the court; that the sheriff did not report the sale and the amount of bid to the court in which judgment was rendered; that the court did not appoint disinterested and competent appraisers to appraise the value of the property and the improvements thereon, and did not confirm the sale as provided by said Section 9952A-9.

Appellant concedes this, but contends that Sections 9956 and 9958, R.S.Mo.1929, under which said judgment was rendered controlled the subsequent proceedings to be made in the enforcement of the judgment lien; and that, applying the procedure presented by Sections 9952A-9 and 9952A-10 of the Act of May 31, 1939, to a sale under a judgment rendered in 1932, would be to give a retroactive effect to those sections in violation of a settled rule of statutory construction. In reply, attention is called to the fact that Sections 9956 and 9958, R.S.Mo.1929, were expressly repealed by the Act of April 7, 1933, Laws of Mo.1933, p. 429. Section 9962b of the latter Act preserved the right of the collector "to proceed to final judgment and foreclosure of the tax lien under the provisions of the law as it existed prior to the passage of this Act". Laws of Mo. 1933, pp. 444 and 445, Mo.R.S.A. § 11168. Section 9962b, together with all other sections of the Jones-Munger Act in conflict with the provisions of the Act of May 31, 1939, was expressly repealed; and when a repealing law is itself repealed, the former law is not revived and reinstated unless it be otherwise expressly provided, R.S.Mo. 1939, Sec. 658, Mo.R.S.A. § 658. State v. Slaughter, 70 Mo. 484.

The general rule that statutes will be construed to be prospective in operation does not apply to statutes affecting procedure; and all statutes relating to the enforcement of judgments, such as the levy of executions and the sale of property, are, in the absence of a contrary legislative intent, applicable to all judgments "whether obtained before or after their passage". 59 C.J. par. 709, pp. 1177, 1178. Such expressly is the law of Missouri, Clark v. Kansas City, St. L. & C. R. Co., 219 Mo. 524, 118 S.W. 40, 43; State ex rel. v. Haid, 330 Mo. 1093, 52 S.W.2d 183. But counsel for appellant insist that Section 9952A-16, Laws 1939, p. 884, Mo.R.S. A. § 11198, preserves the right to foreclose this tax lien under the general law as it existed at the time the judgment was rendered. That Section reads thus:

"General law shall continue to govern, when.—The general law, as now existing, in all matters relating to taxation on the collection of delinquent taxes not specifically provided for in this Act shall continue to be the law for the counties coming within the operation of this article".

It is to be remembered that the amendment of May 31, 1939, repealed the Jones-Munger Act only in its application to St. Louis and St. Louis County. With respect to the rest of the state the Jones-Munger Act remained in effect; and the general law continued to govern the collection of delinquent taxes "not specifically provided for in this Act", towit, the Act of May 31, 1939. A brief examination of the emergency which led to this amendment clarifies interpretation of the various sections of the Act. House Bill 677 (Act of May 31, 1939) was attacked mainly on the alleged ground that, in its application solely to St. Louis City and St. Louis County, and not to all places similarly situated, it was void as a special law.

The Supreme Court of Missouri in Hull v. Baumann, 345 Mo. 159, 131 S.W.2d 721, 725, held that, in this case, classification by population was justified and made no unreasonable and arbitrary discrimination between different persons or different classes of persons, and was therefore not violative of Federal or State Constitutions. The court in its opinion (131 S.W.2d at pages 724, 725) sets forth in detail the reasons for this conclusion. It is there stated that the general real estate markets in the City of St. Louis and St. Louis County vary to a great extent from those in practically all the other counties of the state, in that there more property is bought and sold for the purpose of speculation and profit instead of for use and habitation, thereby causing a greater amount of trading, sale, and resale, and the investment of large sums of money for the erection of improvements in order to make vacant property valuable as an investment. This creates a greater demand for the insuring and guaranteeing of titles and the necessity of some method of obtaining an adequate consideration at tax sales. The absence of any such method by appraisement, court approval, or otherwise in the Jones-Munger Act had caused the major title and insurance companies of St. Louis City and St. Louis County to refuse to insure the titles to property sold or purchased under the provisions of that Act.

It was agreed that, because of certain provisions contained in House Bill 677, relative to and assuring Court approval of the price or consideration for sales held under its provisions, such titles would be insured and the real estate market would be stabilized. This decision in our judgment is conclusive of this phase of this controversy. This law—a response to an emergency demand for the preservation of the public welfare, calls to mind the language of Presiding Justice Lamm in Clark v. Kansas City, St. L. & C. R. Co., supra, 118 S.W. loc. cit. 43:

"Being highly remediable, it should be most liberally construed to further its life in advancing the remedy and striking down the mischief aimed at—the need and occasion of the law, the mischief felt, and the object and remedy in view being cardinal elements in statutory interpretation".

It cannot be that that remedy should be held in abeyance for eight years between April 15, 1932, and November 12, 1940. See State v. Haid, 330 Mo. 1093, 52 S.W.2d 183. State v. Bair, 333 Mo. 1, 63 S.W.2d 64, 67, and Roberts v. Benson, 346 Mo. 676, 142 S.W.2d 1058.

Since we have concluded that the sale of November 12, 1940, was void for the reasons above stated, we find it unnecessary to consider the question of adequacy of consideration, although under the facts disclosed in the record that point is not without substance under the rule announced by the Supreme Court of Missouri in Ellis v. Powell, 117 S.W.2d 225. The enterprise between Berger and appellant Benas, having as its aim the temporary possession of this plant for the acquisition of the scrap-iron attainable, amply supports the findings of the referee. $1,500.00 paid with no purpose other than to obtain and dispose of personal property appraised and conceded to be worth approximately $20,000 in this market, is sufficiently inadequate to raise a question of fraud in law as announced in the cited case. Whether that enterprise amounts technically to conspiracy is unimportant. The referee confessed that the question of Benas' right to refund of the purchase money paid by him at the tax sale gave the referee considerable trouble. He finally, in his order, made rather a conditional disposition of the matter. The court concurred generally in the findings of the referee and left the appellant in "the situation in which he finds himself as a result of his inequitable purpose and conduct".

In the instant case we do not feel that we have before us sufficient ultimate facts to justify an explicit disposition of the money paid by appellant to the sheriff at the tax sale, consisting apparently of taxable costs and attorneys' fees on the face of the execution, costs of the sale, etc. In fact any balance in satisfaction of taxes has never been turned over nor accepted by the collector, whose attorney preferred that, in the meantime, the sheriff should hold the money.

It has been called to our attention that the public policy of the state appears to favor recovery of the purchase price paid at the sale—not by virtue of any act or statute, but by reason of the operation of the principles of equity. Williams v. Sands, 251 Mo. 147, 158 S.W. 47; Queen City Inv. Co. v. Kreider et al., Mo.Sup., 31 S.W.2d 1002, 1006.

The trial court retains jurisdiction of the cause, and may make such final order respecting the return of the money

paid by the purchaser at the tax sale, if any, as the ultimate facts may justify. With this potential reservation, the decree below is affirmed.