EINSTEIN, Appellant, v. HOLLADAY-KLOTZ LAND & LUMBER COMPANY, Respondents.

St. Louis Court of Appeals, June 4, 1908.

1. **DEEDS: Delivery: Inserting Name of Grantee After Delivery.** Where land was sold and deed executed and delivered to the purchaser with the name of the grantee left blank, with authority to the purchaser to insert his own name or any other he should choose, such deed, after the insertion of the name of a grantee, passed the title to such grantee.

2. **EVIDENCE: Abstract Books: Copies of Records.** Copies of official records are admissible in evidence when such records are destroyed; but entries in abstract books which do not purport to be copies of deed records, but a digest of the differ-

ent instruments shown by such record, are not admissible in evidence to show title.

3. ——: ——: ——: Index.    While section 9067, Revised Statutes 1899, requires a recorder of deeds to keep a book known as "an abstract and index of deeds," this would not make abstract books kept by an abstractor admissible in evidence where it was not shown that his abstracts were copies of the recorder's abstract book.

4. ——: ——: Refreshing Memory.    But an abstractor, who made a set of abstract books and was familiar with the records of the deeds before the records were destroyed, may refresh his memory from his abstract books for the purpose of testifying to the contents of the destroyed record.

5. ——: Names: Evidence to Identify Party.    Where a grantee in a deed was named "Wm. J. Lewis" and the next deed in the chain of title was from "Wm. J. Leus," evidence outside the record could be resorted to to prove the identity of the grantee in the former deed with the grantor in the latter.

6. ——: Tax Deed: Names: Prima-Facie Case.    Under section 3150, Revised Statutes 1899, where a suit to enforce a tax lien against land was brought against J. W. Lewis, when Wm. J. Lewis owned the land, the trial court on sufficient evidence might find that the suit was brought against the real owner, so that the grantee in a deed, made in pursuance of the tax sale under the judgment rendered in such suit, would acquire his title.

7. ——: ——: Prima-Facie Case.    Under section 3150, Revised Statutes 1899, a tax deed made in pursuance of a proceeding to enforce a lien for taxes against parties who did not own the land, makes out a prima-facie case of title in the grantee, but such prima-facie showing is overcome by an unrecorded deed from the real owner of the land to the other party in the suit.

Appeal from Wayne Circuit Court.—*Hon. Jos. J. Williams*, Judge.

REVERSED AND REMANDED.

*W. D. Isenberg, O. L. Munger* and *R. L. Ward* for appellant.

*Gamble & Taylor* and *W. B. Kennedy* for respondent.

GOODE, J.—1. This is an action for the value of timber cut from lot 1, of the northeast quarter and lot 2 of the northwest quarter, section 6, township 26, range 4, in Wayne county. The action originally embraced also damages for timber cut from lot 1 of the northwest quarter of said section, but this claim was abandoned. The case was here on a previous appeal and is reported and the facts stated in 118 Mo. App. 184. On the second trial, which was by the court without a jury, the defendant prevailed. The entire question turns on the title to the premises, as the land was not in the possession of either party and had not been prior to the alleged trespass. Plaintiff swore he paid taxes on it for a few years, but his testimony shows he had paid none since the Civil war. Defendant introduced tax receipts to show it had paid the taxes from 1892 to 1905. These were all the facts except the cutting of the timber, going to show either party had been concerned with the land. Plaintiff's chain of title runs thus: a patent to the land granted by the United States to Charles Faber and dated August 1, 1860; a warranty deed from Charles Faber to plaintiff dated August 15, 1860. The deed from Faber to plaintiff was unrecorded; whereas the conveyances running from Faber under which defendant claims, were recorded, and if valid, would take precedence over plaintiff's deed. Plaintiff's own testimony and that of a witness named Betts, introduced by him, went to show the latter deed was executed by Faber with the name of the grantee left blank, but with authority from Einstein as purchaser, to insert his own name or any other he chose. The land was bought by Einstein through Betts, who acted as the former's agent in many land purchases about that time, and the statements of these men were unequivocal that the deed was delivered by Faber with authority to the purchaser to insert the name of the grantee. It is contended by defendant that delivery of the deed with

the name of the grantee left blank, prevented it from passing the title to the lands described in it, and hence plaintiff acquired no title and has none now.    In support of this proposition we are cited to numerous authorities, but consider that, though the law may be otherwise in outside jurisdictions, the validity of the deed is settled by the decision in Thummel v. Holden, 149 Mo. 677, 51 S. W. 404.    Counsel for defendant insist the name of the grantee had to be inserted before delivery in order for the deed to be effective.    In the case cited that very point was involved and determined the other way.    See, too, Farmers' Bank v. Worthington, 145 Mo. 91, 46 S. W. 745.    Plaintiff made out a prima facie title to the land and, of course, to the timber on it.    To show title in itself, defendant company offered in evidence certain entries in a series of books containing abstracts of title to the lands in Wayne county. It was admitted the records of deeds of the county of Wayne had been burnt and the entries in the abstract books were offered as having been made from the deed-records before their destruction.    On the former appeal we held the entries from the abstract books were not admissible in evidence because of the insufficiency of the proof of their accuracy, which was the objection then raised against their admissibility.    Defendant's counsel contend the evidence of this fact contained in the present record, is cogent enough to overcome the objection to the competency of the entries.    Two witnesses who worked on the abstract books, Mr. Andrews and Mr. Williams, testified on the point.    Andrews said he copied many of the entries from the records and that other entries in his handwriting were made by him while an assistant by the name of Needer read the contents of the instruments from the records.    He testified, too, that he generally examined the records for himself; that he and Needer sat beside each other during the work and he frequently compared the entries with

the records. Williams gave about the same testimony, saying he and his assistant went over the work after it was done, comparing the entries in the abstract books with the record of the conveyances, and that they only found one mistake in the course of their examinations. We may concede this testimony would suffice to render a copy of an official record admissible in evidence, if said record was destroyed and the original instrument itself could not be produced. · [2 Wigmore, Evidence, sec. 1279; 1 Greenleaf, Evidence (Lewis Ed.), sec. 508; Reid v. Magison, 1 Campb. 469; Fyson v. Kemp, 6 C. & P. 71; Hill v. Packard, 5 Wend. 387; Morris v. Swaney, 7 Heisk. 578; Nelson v. Whitfield, 82 N. C. 53.] The difficulty is that the entries in the abstract books are not, and do not purport to be, copies of any record contained in the office of the recorder of deeds of Wayne county. They are digests or epitomes of the different instruments, taken from the records by men who compiled the books—abstracts of the essential parts of the conveyances, but in no sense copies. The entries give the names of the grantors and grantees, the day, month and year of the execution of the instruments and also of their recording, indicate by initials the kinds of instruments, and designate the different books and pages of the records from which these items were selected. We have a statute in this State requiring the recorder of deeds of each county to keep a book known as the "Abstract and Index of Deeds" which shall show the same parts of conveyances filed for record as are shown by the entries in question. [R. S. 1899, sec. 9067.] This official abstract and index of deeds is competent evidence when the deed records of the county have been destroyed, and the original instrument is not in the possession of the party offering the abstract. [Smith v. Lindsay, 89 Mo. 76.] The abstract offered by this defendant was neither the official abstract required by the statute, nor a copy of it. The wituesses did not testify

it was made as a copy of such abstract and index of deeds, or compared with it; but that they copied the entries from the full records of the various instruments. It follows the abstract books were not admissible as copies of the official index and, not being copies of any official record, we know of no rule by which they would be original evidence. In his learned treatise Mr. Wigmore suggests that consistently with certain exceptions to the general rules of evidence, abstracts of deeds as ordinarily made up by conveyancers and persons engaged in the business of furnishing abstracts of title, might be received as secondary evidence when the original instruments and the official records of them are destroyed, but says this has not been done by the American courts except when a statute authorized it. The author cites a case in which Lord Eldon held an abstract of title made in the usual course of business by an attorney, was admissible to show the contents of lost deeds. [3 Wigmore, secs. 1705, 2105 and notes; Ward v. Garnons, 17 Ves. Jr. 134.] As this is an intermediate court we are unwilling to take the responsibility of innovating on the law of evidence to the extent of treating abstracts of title as evidence *per se* of lost conveyances, when the abstracts are not copies of official records. Therefore we hold, as we held before, that the entries in question were not competent except as memorandums from which witnesses might refresh their memories as to the contents of the burnt records.

3. The testimony of Andrews who had participated in making the abstract books and had been familiar with the records of deeds before they were burnt, tends to show an independent recollection that conveyances corresponding to the entries in the abstract books were of record. This witness was examined and cross-examined at great length and we cannot reproduce his testimony. In so far as it was given from memory, refreshed by reading the entries in the abstract books, it

was competent as evidence tending to prove defendant's chain of title, and of sufficient force to warrant the trial court to find deeds had been of record like those indicated by the entries.

4. The next inquiry relates to whether or not the several conveyances relied on to establish title in defendant were sufficient for this purpose. One of the essential links in defendant's chain of title, both to lot one of the northeast quarter and to lot two of the northwest quarter, is a deed from Charles Faber, the patentee, to Wm. J. Lewis. It seems from the testimony the name of the grantor, as shown in the abstract books, looks more like Charles Taber than Charles Faber. However, there is testimony that even in said books a faint indication was visible of a stroke across the front of the first initial of the family name, making said initial an F instead of a T. Besides the testimony on this point, Andrews gave some which tended to show that whether the name in the abstract books is Faber or Taber, in the deed as recorded, the name was Faber. Though he was not positive, his testimony tends to prove there was a deed of record in the county, signed by Charles Faber, and conveying the land in controversy. This testimony was sufficient to authorize the inference that such a deed existed. It raised an issue of fact which we must assume the court found in favor of the defendant.

5. The grantee in the deed from Faber, the patentee, was, as said, Wm. J. Lewis; whereas the next conveyance was from Wm. J. Leus to Jno. W. Schneider. On account of this discrepancy in the names, counsel contends there was a break in defendant's chain of title. There is testimony in the transcript that what appears to be the name Leus on the abstract book was meant to be Luis. If this is true, the name of the grantor in the deed to Schneider is Wm. J. Luis. The essential question just here is not so much the true spelling of the

name, or whether the two forms are *idem sonans,* but
whether there was evidence to prove the person who
was grantee in the deed from Faber was the person who
was grantor in the deed to Schneider. When the name
of the grantee in one conveyance and of the grantor
in a subsequent conveyance are the same, it is presumed
prima facie the parties were the same; but if evidence
*aliunde* must be resorted to in order to prove the iden-
tity of grantee and grantor, it is received. [1 Devlin,
Deeds.(2 Ed.), secs. 183, 184; Railroad v. Stealey, 66
Tex. 468; Skinker v. Haagsma, 99 Mo. 208, 12 S. W.
659.] Hence, whether or not the Lewis named as gran-
tee in the deed from Faber, was the same person who
was grantor under the name of Leus or Luis in the deed
to Schneider, was a question of fact to be determined by
the trier of the facts, if there was any evidence from
which it could be determined. We think there was
ample evidence. Plaintiff himself proved Wm. J. Leus
was a land speculator and engaged largely in transac-
tions in Missouri lands about the date of those deeds;
engaged, too, in forging deeds to lands. This testimony
was offered for the purpose of proving Leus forged the
deed from Faber to himself. If sufficient to justify a
finding that this was true, it did not compel the finding.
And it was sufficient, on the other hand, for a finding
that the instrument was genuine and the same person
was a party to it and to the Schneider deed; in the first
as grantee and in the other as grantor.

6. The next link in the chain of title is a sheriff's
deed under a judgment for taxes against J. W. Lewis
and Jno. W. Schneider to G. W. Clarkson. The or-
iginal of this deed was introduced in evidence. It con-
veyed the title only to lot two of the northwest quarter.
An unbroken chain of conveyances runs from Clarkson
to defendant, and the only question concerning the title
of said lot two is whether or not it became vested in
Clarkson by the sale for taxes. If we are right in our

conclusion supra, that the deed from Leus or Luis to Schneider passed the title to the latter, then Clarkson acquired it by the tax deed, for Schneider was a defendant in the action for taxes and judgment went against him.    J. W. Lewis instead of W. J. Leus or Luis was also a defendant in said action for taxes.    A statute of this State said all deeds executed before the enactment of the statute, or that thereafter might be executed, by the sheriff to a purchaser of land sold for taxes, should be prima facie evidence that the persons named as defendants in the suit to enforce the lien for taxes, were absolute owners of the land conveyed, at the institution of the suit.    [R. S. 1899, sec. 3150.]    Though the defendant in the tax suit was J. W. Lewis, instead of Wm. J. Lewis, in view of said statute we hold the court, as trier of the facts, might find the Lewis named as defendant was the real owner of the land at the time the action was instituted.    It follows that if he owned any interest in the land; (that is, if his deed to Schneider had failed to pass the title which had been conveyed to him by Faber) Clarkson acquired his interest by the tax deed.    If the title passed to Schneider, Clarkson acquired it because Schneider was a defendant in the tax suit.    The result is this: there was evidence from which the court was justified in finding defendant was the owner of lot two of the northwest quarter when the timber was cut.

7.    The title to lot one of the northeast quarter is in a different condition.    That, too, was included in the conveyance from Charles Faber to W. J. Lewis, and also in the conveyance from W. J. Leus to John W. Schneider; but the chain of title breaks with the last conveyance and defendant, instead of deraigning title from Lewis and Schneider, deraigns it through a sheriff's deed under a judgment given in an action instituted for taxes against F. W. Seward and Daniel Cunningham.    There is nothing to show Seward and Cun-

ningham ever had any interest in the land; so defend-ant made out no title to this lot. The contention for defendant in this connection is that section 3150 of the statutes, cited supra, made the tax deed prima facie evidence of title in defendant, and the court, as trier of the facts, might find in favor of defendant's title. We have found no decision construing said statute, but taking it at its face value, and conceding the tax deed executed by the sheriff in the action for delinquent taxes against Seward and Cunningham, shows prima-facie title in defendant, it did not show a title so con-clusive that a superior record title would not overcome it. Plaintiff's record title was superior. As we have stated, the deed from Faber to him was dated August 15, 1860; whereas the deed from Faber to Lewis was dated January 15, 1866, or six years later. It is true plain-tiff's deed was not put to record, and if defendant had conveyances of record tracing back to Faber and cov-ering said lot one, defendant's title would prevail against the unrecorded deed. But it has no such chain of title to said lot, but merely one running back to Seward and Cunningham, who never owned the land. Hence we hold plaintiff's title must prevail over the defendant's as to said lot one, notwithstanding the above statute.

8. An admission was made as to the quantity of lumber cut off the two lots and its value, but the quan-tity taken off each cannot be determined.

The judgment is reversed and the cause remanded. All concur.