M. E. DUNAVANT, Administrator of the estate of
E. H. YOUNG, Deceased, Respondent, v. PEMIS-
COT LAND and COOPERAGE COMPANY, a
Corporation, Appellant.

Springfield Court of Appeals, January 30, 1915.

1. TRESPASS: Title to Real Estate: Chain of Title Set Out.
Action for trespass consisting in the cutting and removing by
defendant company of certain timber on land claimed by plain-
tiff. The title to the land is the chief question at issue. Title
of parties outlined.

2. TAXES: Sale Under Judgment for Taxes: Description in
Petition as Affecting Jurisdiction. Jurisdiction to render judg-
ment against a particular tract of land and sell same for de-
linquent taxes is only acquired by a petition correctly describ-
ing such land.

3. ————: Judgment for: Petition Misdescribing Land: Void
Judgment. A judgment rendered in a tax proceeding against
property different from that described in the petition is void and
open to collateral attack.

4. ————: ————: ————: Correct Description in Other Stages
of Proceedings: Does Not Supplement. Where a judgment in
a tax proceeding is void because the property is incorrectly
described in the petition, it does not aid the title based on the
tax deed that the tax bill filed with the petition, the order of
publication, the judgment, execution and sheriff's deed correctly
describe the land.

5. ————: Sale of Land for: Misdescription of Land: Lost
Petition. The original petition in a suit to sell land for taxes
having been lost or destroyed, two certified copies thereof were
introduced showing that the property was incorrectly described.
The clerk testified that he had carefully made and compared the
original and the copies and his evidence was corroborated and
not contradicted. The court properly ruled that no title passed
under the sale.

6. JUDGMENT: Service: By Publication: "Unknown Heirs and
Devisees" of Person Alive: Ineffectual. Where suit was brought
to quiet title and service was obtained by publication against
"the unknown heirs and devisees of ————, deceased," who was at
that time alive, the judgment availed nothing.

7. ————: Quieting Title: Retroactive Effect. Where a judgment quieting title was obtained subsequent to an alleged trespass, it had no retroactive effect on the right to sue for the trespass.

8. QUIETING TITLE: Effect of Judgment: Parties Comprehended by. The effect of an ordinary decree to quiet title is only to preclude defendant, or any one claiming under him, from asserting against plaintiff or his successors any title to or interest in the real property affected.

9. ————: ————: Strangers to Suit. A decree to quiet title does not transfer to plaintiff, as against a stranger to the suit, the title theretofore held by defendant.

10. TRESPASS: Title of Parties to Suit: Plaintiff May Rcover When. In an action for trespass the plaintiff may recover without proving a complete chain of title, where defendant's title was traced to a void judgment against plaintiff.

11. TITLE: Suits to Test: Common Source of Title. In suits to determine title neither party can go behind or question the common source of title and the only question is who has the better title from that common source.

12. EVIDENCE: Discrepancy in Chain of Title: Explaining Away. Where a discrepancy occurs between the name of the grantee in one conveyance and the grantor in another forming a chain of title, it is permissible to show that such grantor and grantee are one and the same person.

13. WITNESSES: Method Pursued in Examination: What Not Error. During the examination of a witness testifying as to an error in the name set out in a deed the witness was handed an uncertified copy of the recorded deed and was allowed to use same as a basis of her evidence. No error was thereby committed. This method of examination amounted to no more than the stating of the facts shown by the deed hypothetically.

14. TRIAL PRACTICE: When Question Not for Jury. Where the evidence of a fact is all one way and of such probative force that the court could not permit a contrary verdict, the question should not be submitted to the jury but should be treated as fully established.

15. TAXES: Failure to Pay: Does Not Show Abandonment. Failure to pay taxes does not, of itself, constitute abandonment of title or of property.

Appeal from Pemiscot Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED.

*Ward & Collins* for appellants.

(1) The court erred in admitting incompetent, irrelevant and immaterial testimony offered by plaintiff, which undertook to vary and contradict a written contract or the record thereof. Childers v. Pickenpaugh, 219 Mo. 451; Chilton v. Metcalf, 234 Mo. 27; Smith v. Vickery, 235 Mo. 423; Baker v. Underwood, 63 Mo. 84; Roberts v. Central Lead Co., 95 Mo. App. 582; Wishart v. Gerhart, 105 Mo. App. 112; Simon v. Beauchamp, 1 Mo. 589; King v.Fink, 51 Mo. 209; Weissenfels v.Cable, 208 Mo. 534. (2) Though the parol testimony offered was directed to the record of the deed and not the deed itself; yet that question can make no difference because it is presumed that the record is right and before parole testimony could be introduced to undertake to show (even in a suit in equity to correct the record) that the recorder incorrectly recorded the deed, plaintiff must account for the original. Benton v. Craig, 2 Mo. 198; Lewin v. Dille, 17 Mo. 64; Carr v. Carr, 36 Mo. 408; Price v. Hunt, 59 Mo. 262; Shehan v. Ins. Co., 53 Mo. App. 355. (3) Defendant's demurrer should have been sustained. This is an action for trespass for cutting down and making away with timber and it will not lie against a defendant actually in possession of the land either by himself or his tenants. To maintain a suit for trespass plaintiff must have possession, actual or constructive. Moore v. Perry, 61 Mo. 174; Holliday-Klotz L. & L. Co. v. Markham, 96 Mo. App. 51; Brown v. Hetzel, 87 Mo. 568; Hampton v. Morrey, 53 Mo. App. 501. (4) In a suit for timber cut off of what plaintiff claims to be his land, the legal title is involved. Ozark L. & L. Co. v. Franks, 156 Mo. 673. (5) Where one claiming the title to land is guilty of gross laches, and with full knowledge of his claim allows the opposite party to expend his money, or waits until the prop-

erty has largely enhanced in value, either from this or other causes, he is barred by laches though not by the statute. Moreman v. Talbott, 55 Mo. 392; Loomis v. Railroad, 165 Mo. 495; Kroenung v. Goerhie, 112 Mo. 648; Kline v. Vogel, 90 Mo. 247; Shelton v. Horrell, 232 Mo. 374; Cochrell v. Hutchison, 135 Mo. 75; Rutter v. Caruthers, 223 Mo. 640; Stevenson v. Smith, 189 Mo. 446; Landrum v. Bank, 63 Md. 56.

*N. C. Hawkins,* and *Shepard, Reeves & McKay* for respondent.

(1) The lands were actually sold to "Dewitt" and "Dewitt" was actually written in the deed and the transcription of the name as Dervitt did not deprive "Dewitt" of title, nor does it deprive E. H. Young of title since Frank E. Dervitt and Frank E. Dewitt are *idem sonans* and the variance is immaterial. The following have been held to be *idem sonans*: Havely-Haverly—State v. Havely, 21 Mo. Sup. 489; Maier-Meyer—Maier v. Brock, 222 Mo. Sup. 74; Davison-Davidson—Davison v. Loan Assn., 166 Mo. App. 625; Whinny-Whinnery—Whinny v. Lbr. Co., 132 S. W. 661; Alwin and Alvin—Jockisch v. Hardtke, 50 Ill. App. 202; Erwin and Irvin—Williams v. Hitzie, 83 Ind. 303; Conavay-Conaway—Conoway v. Hays, 7 Blackf. (Ind.) 159; Thweatt-Threet—Golden v. State, 55 Ala. 178; Van Nortrick-Van Nortwick—Mallory v. Riggs, 76 Iowa, 748; Lovett-Lovatte—Lovett v. S., 9 Ga. App. 232. (2) Defendant (if it is to be believed) had for many years been asserting title to the lands in question and has no other than the tax title as a basis for its claim, hence it assumed a common source of title. Sec. 6346, R. S. 1909; Williams v. Sands, 251 Mo. 147; 15th Cyc. page 66. (3) The defendant is not in a position to avail himself of the doctrine of estoppel. *Caveat emptor* applies to tax sales and a purchaser is charged with notice of irregularaties disclosed by the record.

35 Cyc. 1525 Ca. (4) There is no evidence in this case tending to establish estoppel by abandonment or laches. Mere payment of taxes without possession will not constitute laches. Hoarstick v. Gabriel et al., 200 Mo. 242; Williams v. Sands, 251 Mo. 147. (5) Estoppel by conduct, abandonment, does not apply unless the party knew of his rights and that they were being infringed. Howell v. Jump, 140 Mo. 441; Moore v. Crawford, 130 U. S. 122. (6) The judgment was for the right party, in the proper amount, even less than the testimony warranted by $340, and this being a suit at law wherein the plaintiff recovered, the error, if any, committed by the trial court against appellant did not materially effect the merits of the action, and should be affirmed. Secs. 1856-2082, R. S. 1909; Thompson v. Stillwel, 253 Mo. 89; Peterson v. Transit Co., 199 Mo. 331; Gillespie v. Hendren, 98 Mo. App. 627.

STURGIS, J.—This is a suit for trespass alleging that the defendant company cut, or caused to be cut, and removed the timber on one hundred and sixty acres of land in Pemiscot county, Missouri, owned by plaintiff intestate, E. H. Young, who died in 1912, shortly before this suit was brought. The suit is by Young's administrator, but, as the cause of action accrued to him during his lifetime, he will be spoken of as the plaintiff. Carl Bloker, secretary of the defendant company and its active manager, was originally a defendant, but the cause was dismissed as to him on proof that all his acts were for his company. The jury, under the court's instructions, returned a verdict for plaintiff for $1250 and defendant appeals. The tres pass was committed in 1909 and 1910 and there is no question but that the defendant, claiming the right to do so, sold the timber on said land and authorized and directed the timber to be cut and removed therefrom. Defendant denies plaintiff's ownership of the land, asserts title in itself, and the chief question at issue is

that of title. The court treated plaintiff's title as fully established by the evidence and instructed the jury on that theory.

The land has never been enclosed, improved, or in the actual occupation of any one. It is, or at least was until recently, swamp land and chiefly valuable for its timber. On and prior to January 1, 1895, one S. H. Beverforden owned this land under a perfect chain of title. On that date he, jointly with his wife Emma A., made and executed a warranty deed, which, as recorded, shows the land conveyed to Frank E. *Dervitt*, of Jackson county, Missouri. There has never been any conveyance from Frank E. Dervitt to any one, nor is there any evidence, direct or circumstantial, that any such person ever existed, except as may be inferred from the record of this deed. The next conveyance of the land is a deed from Frank E. *Dewitt*, of Independence, Jackson county, Missouri, to E. H. Young, of the same county. This deed is properly acknowledged before a notary public of that county. In March, 1897, E. H. Young paid the taxes on this land for four years, being 1892 to 1896 inclusive. The taxes for 1897 and 1898 being delinquent, a suit for delinquent taxes was instituted in 1900 against E. H. Young, resulting in a judgment and sale of the land and a sheriff's deed, dated February 22, 1901, conveying the land to one William Hunter. The defendant claims by mesne conveyances under this tax deed. At that time Young was a resident of Kansas and service was had in the tax suit by publication. The purchaser at the tax sale, Hunter, sold and conveyed the land in 1902 to several persons, who then, or later, formed the defendant company, an Ohio corporation, and at once conveyed the land to it.

When the trespass was committed in 1909 and 1910, the defendant company, or Carl Bloker who held the legal title for it, had and claimed no title to this land except that derived from E. H. Young under the tax sale and deed above mentioned. It is shown that this

tax sale and deed is void and conveyed no title because the petition in the tax suit failed to describe the land in controversy, which is in section three, but described other land in section thirteen. The court obtains jurisdiction to render judgment against a particular tract of land and to sell same for delinquent taxes only by a petition correctly describing such land. It is held in O'Day v. McDaniel, 181 Mo. 529, 534, 80 S. W. 895, that: "It is unquestionably the law of this State that in a proceeding practically *in rem* to fix a lien upon property it is essential that the petition shall describe the property in some definite or appropriate way as a necessary part of the statement of the cause of action. It was so ruled in Milner v. Shipley, 94 Mo. 106, and that a judgment rendered in a tax proceeding under our statutes against property different from that described in the petition was void and open to collateral attack, and in Vaughan v. Daniels, 98 Mo. 234, that a judgment upon a petition describing no land at all was also void. . . . The subsequent proceedings are dependent on the jurisdictional facts required to be alleged in the petition. . . . But it was not within the power of the court to make the taxes a lien or charge upon property different from that described in the petition." Nor does it aid the title based on such tax deed that the tax bill filed with the petition, the order of publication, the judgment, execution and sheriff's deed correctly describe the land. [Vaughan v. Daniels, 98 Mo. 230, 11 S. W. 573.]

At the time of this trial the original petition and other papers constituting the roll in the tax suit were lost or destroyed. These papers were, however, in existence at the time the controversy arose over this land and each party had a certified copy of the petition, which showed that the land described therein was not the same land as that described in the judgment and tax deed. The clerk who had made and certified to these copies testified that he was careful in making and

comparing the same and there was evidence of others who had examined the original petition and noted the erroneous description. There was no evidence to the contrary and we think the court did not err in holding as a matter of law that no title passed under the tax sale and defendant, therefore, had no title at the time of cutting this timber.

It is shown that defendant, or Bloker for it, brought a suit and obtained judgment to quiet title to this land in 1912 against E. *Dervitt* and the unknown heirs, devisees, etc., of E. H. Young, deceased. This service was by publication and as E. H. Young was then living, a suit and judgment against his unknown heirs, etc., could and did avail nothing. The judgment against Dervitt, assuming that there was such a person and that he had title and that the judgment conveyed same, yet it was subsequent to the trespass complained of and could be given no retroactive effect. Such decree, however, though it adjudges the defendant, then plaintiff, to be the owner of this land, is so only as between it and Dervitt and it can hardly be said to *convey* even Dervitt's title, if any, to this defendant. Its effect is to debar Dervitt, or any one claiming under him, from thereafter asserting title. "The effect of an ordinary decree to quiet title is only to preclude defendant, or any one claiming under him, from asserting against plaintiff, or his successors, any title to or interest in the real property affected, and such a decree does not have the effect of transferring to plaintiff, as against a stranger to the suit, the title theretofore held by defendant." [32 Cyc. 1384. See also Powell v. Crow, 204 Mo. 481, 102 S. W. 1024.]

It should be noted that although the record of the deed shows a conveyance from Beverforden to Dervitt, while E. H. Young's title is from Dewitt, yet, the defendant's only claimed title is from and under Young by virtue of the tax sale and deed. If Young had no title, then defendant had none. Young is the common

source of title. It has been frequently held that in ejectment and suits to determine title—in contests to determine whether plaintiff or defendant has the legal or better title—the title in the common source is the true and legal title for the purpose of that case and for the purpose of determining in that suit the title between the parties thereto. Neither party can go behind or question the common source title and "the only question is who has the better title from the common source." [Williams v. Sands, 251 Mo. 147, 160, 158 S. W. 47, and cases cited.] We know of no reason why this same rule should not apply to this action of trespass, where the judgment follows a determination of the title and goes in favor of the party adjudged to have such title. We so rule and, as we have seen that defendant's title from the common source is void, the plaintiff must prevail. This ruling is decisive of this case.

If, however, we should extend the doctrine that plaintiff must recover on the strength of his own title and not on the weakness of that of defendant and thereby inquire into the title back of the common source, Young, defendant will not fare any better. The only broken link claimed in plaintiff's title is that the grantee in the conveyance from Beverforden is Frank E. *Dervitt*, while the grantor in the next conveyance to Young is Frank E. *Dewitt*. Where there is a discrepancy in the name of the grantee in one conveyance and the grantor in another forming a chain of title, it is permissible, and not violative of the rule against allowing parol evidence to vary or contradict a written instrument, to show that such grantee and grantor are one and the same person. This is true where the discrepancy is caused by an error in recording a conveyance, as is claimed here, or is an error of the scrivener in writing the deed, or that the person himself is known and designated by different names or different forms or spelling of the same name. [Einstein v. Land & Lum-

ber Co., 132 Mo. App. 82, 111 S. W. 589; Skinker v. Haagsma, 99 Mo. 208, 12 S. W. 659.] It is quite a different thing to allow proof that a conveyance to Frank E. Dervitt, one person, was intended to be a conveyance to Frank E. Dewitt, another and different person, than to allow proof that a conveyance to Frank E. Dervitt and one from Frank E. Dewitt are in fact conveyances to and from the same person.

In the present case not only do these deeds indicate the indentity of the grantor and grantee as being the same person by the close similarity of the spelling and pronunciation of the names and the sequence of the dates of the two instruments and the descriptions of the residence of each, but the wife of Beverforden, herself one of the grantors in the deed recorded as having Dervitt, grantee, testified positively that the land was sold and conveyed to Frank E. Dewitt whose residence was Independence, Jackson county, Missouri, with whom she was acquainted and to whom she and her husband had made another conveyance a short time previous and that she never knew of or made a deed to a person named Dervitt. She is corroborated in this by the fact that the former conveyance was made to carry out an exchange of land and produced a certified copy of the deed given to her in exchange executed by Frank E. *Dewitt*, of Jackson county, Missouri, and acknowledged before a notary public of that county. In the absence of any evidence that there ever was such a person as Frank E. Dervitt, or that he or any one under him ever made any claim to or conveyance of this land, this evidence must be taken as conclusive that the grantee and grantor in these respective deeds are one and the same person.

It is strenuously objected that during Mrs. Beverforden's examination she was handed an uncertified copy of the recorded deed showing the grantee to be Frank E. Dervitt and was allowed to use this copy as a basis of her evidence. At most, however, this copy

only served to show what she said was error in the name of the grantee, with the date, description of the land and other facts gleaned from a reading of the deed. A reading of this copy, which was shown to be a correct copy in every material matter, may have served to refresh her memory to some extent. This method of examination amounted to no more than the stating of the facts shown by the deed hypothetically and then examining her thereon as to her knowledge and recollection concerning the conveyance with particular reference to ascertaining who was the real grantee therein. There was no error in so doing.

Defendant insists that it should have been submitted to the jury to determine whether the original petition in the tax suit against Young correctly described the land in controversy, such petition being lost, and also whether the grantee, Dervitt, as shown by the recorded deed, was in fact the same person as Dewitt, the grantor of Young. Where the evidence of a fact is all one way and of such strength and so free from suspicion of error that the court could and would not permit the verdict of the jury to stand to the contrary, then such question should not be submitted to the jury, but the fact should be treated as fully established. [Regan v. Railroad, 144 Mo. 623, 634, 46 S. W. 602; Weldon v. Railroad, 93 Mo. App. 668, 67 S. W. 698; Pope v. Cable Ry. Co., 99 Mo. 400, 12 S. W. 891.]

The defendant also claims that plaintiff is barred by laches from maintaining this suit under the law as declared in Shelton v. Horrell, 232 Mo. 258, 134 S. W. 988, 137 S. W. 264, and Toler v. Edwards, 249 Mo. 152, 155 S. W. 26. The facts of this case, however, do not bring it within the rule announced in these cases. This is not a case where a plaintiff, claiming to own land, stands by and sees or knows that another is improving it and enhancing its value by expending labor and money thereon in good faith. As here shown: "all that the Pemiscot Land & Cooperage Company did to it

was to pay the taxes and make these contracts for the sale of the timber and collect the money under these contracts.'' The latest expression of the Supreme Court on this subject is in Myers v. De Lisle, 168 S. W. 676, as follows: ''Properly considered, the evidence on this issue shows nothing save payment of taxes, an entry under color of title and partial improvement of wild land without the knowledge of the record owner. The possession might have ripened into title by limitation in due time, but that period had not elapsed. Failure to pay taxes does not, of itself, constitute abandonment of title or of property. There was no evidence which would justify a judgment for defendant on the plea of laches.'' [Williams v. Sands, 251 Mo. 147, 163, 158 S. W. 47; Haarstick v. Gabriel, 200 Mo. 237, 98 S. W. 760; Stanton v. Thompson, 234 Mo. 7, 15, 136 S. W. 698.] There was no question for a jury on this point.

The amount which plaintiff recovered is less than that which defendant received from the sale of the standing timber and is amply supported by the evidence.

Numerous errors are assigned and discussed in the able brief for appellant, which we have examined and found not reversible. A discussion of the same here would lengthen this opinion and serves no useful purpose. From what we have said the case should be affirmed and it is so ordered.

*Robertson, P. J.,* and *Farrington, J.,* concur.